UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **RANDLE** | * | **CIVIL ACTION** |
| | * | |
| **V.** | * | **NO. 16-15429** |
| | * | |
| **CROSBY TUGS, L.L.C.** | * | **SECTION "L"(4)** |
| | * | |

## <u>ORDER & REASONS</u>

Before the Court is Defendant Crosby Tugs, LLC's Motions for Partial Summary Judgment, R. Doc. 20, and to Exclude and/or Limit Testimony of Plaintiff's Experts, R. Doc. 22. Plaintiff responds in opposition. R. Docs. 24, 25. Having considered the parties' submissions and the applicable law, the Court now issues this Order and Reasons.

**I.     BACKGROUND**

This case arises from an alleged injury sustained by Plaintiff David Randle ("Randle") while employed by Defendant Crosby Tugs, LLC ("Crosby Tugs") as a member of the crew of its vessel the M/V DELTA FORCE. R. Doc. 1 at 2. Plaintiff claims he suffered a stroke on September 10, 2014, while working on board the M/V DELTA FORCE. Ship personnel called 911 and Plaintiff was evacuated from the vessel and brought to the emergency room at Teche Regional Medical Center Hospital ("TRMC"). Plaintiff claims he suffered permanent disability as a result of the medical treatment he received at the hospital. Plaintiff contends that the vessel was unseaworthy and Defendant was negligent in failing to provide immediate proper medical treatment, such as properly trained medical technicians, proper medication, and emergency treatment. R. Doc. 1 at 2.

1

As a result of Defendant's negligence and the unseaworthiness of the vessel, Plaintiff filed suit under the Jones Act and general maritime law, claiming past, present, and future physical, mental, and emotional pain and suffering, medical expenses, loss of wages, fringe benefits, and wage earning capacity. R. Doc. 1 at 3. Plaintiff seeks past, present, and future maintenance and cure benefits. R. Doc. 1 at 3. Finally, Plaintiff claims punitive damages based on Defendant's alleged failure to pay for medical treatment. R. Doc. 1 at 4.

Defendant timely answered and alleges Plaintiff's claims are time-barred, contain no allegation of fault or negligence, and fail to establish a cause of action. R. Doc. 8 at 1. Defendant argues Plaintiff's damages are the sole result of Plaintiff's own fault and negligence, or the fault of someone outside of Defendant's control, and Plaintiff failed to mitigate his damages. R. Doc. 8 at 2-3. Defendant avers that Plaintiff suffered no damages as a result of the breach of any legal duty owed by Defendant, and that any damages were caused by an unavoidable accident or force majeure. R. Doc. 8 at 3. Finally, Defendant denies any unseaworthy conditions, and, in the event that unseaworthiness is proven, invokes the Shipowners Limitation of Liability Act, 46 U.S.C. 30501, to limit liability to the value of the M/V DELTA FORCE and her pending freight. R. Doc. 8 at 4. The parties do not dispute that Plaintiff is a Jones Act seaman.

## II. PRESENT MOTIONS

### a. Defendant's Motion for Partial Summary Judgment (R. Doc. 20)

Defendant filed a Motion for Partial Summary Judgment arguing that there is no evidence that it was negligent or that the M/V DELTA FORCE was unseaworthy. R. Doc. 20-1 at 1. Further, Defendant claims that it is not vicariously liable for any alleged medical malpractice of emergency medical personnel who evacuated Plaintiff from the vessel after the stroke. R. Doc. 20-1 at 1.

Defendant argues that not only does Plaintiff fails to produce any evidence that Defendant

was negligent, but also Plaintiff has acknowledged that there was nothing wrong with Defendant's policies, procedures, or medical equipment. R. Doc. 20-1 at 6. Defendant provides an expert report averring that Defendant's crew responded promptly and immediately to Plaintiff's stroke and obtained medical help. R. Doc. 20-1 at 7. This expert further argues that there is no treatment, regulation, or procedure that could prevent a stroke or lessen its affects before arrival of emergency medical personnel. R. Doc. 20-1 at 7.

Defendant also argues that it cannot be held vicariously liable for any alleged medical malpractice committed by the emergency medical responders or doctors who eventually treated Plaintiff because they are not Defendant's agents. R. Doc. 20-1 at 8-9. Defendant claims that it did not even refer Plaintiff to the care of TRMC, but that it was Acadian emergency responders who took Plaintiff to TRMC. R. Doc. 20-1 at 9. Defendant further argues that neither the medical staff at TRMC nor the Acadian emergency responders are employees of Defendant. R. Doc. 20-1 at 9. Defendant claims no relationship with TRMC and argues that it cannot be vicariously liable for the actions of TRMC. R. Doc. 20-1 at 9.

### b. Plaintiff's Response (R. Doc. 24)

Plaintiff responds in opposition arguing that Plaintiff Randle has enough evidence to demonstrate a genuine issue of material fact regarding his Jones Act claims. R. Doc. 24. Plaintiff argues that Defendant Crosby was responsible for providing medical care and that because Teche Regional Medical Center misdiagnosed him, Defendant failed in its duty to provide adequate medical care. R. Doc. 24 at 2. Plaintiff argues that his Jones Act employer can be held liable for the failure of medical personnel treating an employee and that Defendant did not fulfill its duty to provide medical care by calling 911. R. Doc. 24 at 9. Plaintiff alleges that merely having an employee transported to a hospital is not provision of adequate medical care. R. Doc. 24 at 9.

3

Plaintiff also argues that Defendant may seek contribution or indemnity from the tortious medical facility. R. Doc. 24 at 11. Finally, Plaintiff argues that the Jones Act is the relevant law rather than Louisiana medical malpractice law. R. Doc. 24 at 11. Therefore, Plaintiff argues, he is not required to show the level of proof required in a medical malpractice claim. R. Doc. 24 at 12.

### c. Defendant's Motion to Exclude and/or Limit Plaintiff's Experts (R. Doc. 22)

In addition to its summary judgment motion, Defendant seeks to exclude or limit Plaintiff's experts. Defendant requests that the Court exclude the testimony of Dr. Shamsnia as it relates to 1) the alleged breach of the standard of care in emergency medicine because he is not an expert in emergency medicine and 2) his opinions about the alleged curative properties of use of a CPAP machine and neurorehabilitative therapy for stroke patients because this testimony is not in his report or supported by *Daubert*. R. Doc. 22-1 at 2. Defendant also requests that the Court exclude the testimony of Dr. Shelly Savant, life care plan expert, as it relates to purely palliative care that is not recoverable under the Jones Act. R. Doc. 22-1 at 2-3.

### d. Plaintiff's Response (R. Doc. 25)

Plaintiff responds in opposition arguing that Dr. Shamsnia's opinions should be allowed at trial and that a *Daubert* hearing regarding his opinions is not necessary. R. Doc. 25. Plaintiff claims that because medical malpractice law is irrelevant to Plaintiff's Jones Act claim, it does not matter whether Dr. Shamsnia is qualified to testify regarding the standard of care owed by emergency room physicians. R. Doc. 25 at 7. Plaintiff also argues that a *Daubert* hearing is not necessary because Dr. Shamsnia has presented the basis for his opinions in his deposition and Defendant may cross-examine him regarding these opinions. R. Doc. 25 at 8. Further, Plaintiff alleges that Dr. Shamsnia's opinions about the life care plan are not outside the scope of his report because he is listed in the life care plan and confirmed that he consulted with Dr. Savant on the plan. R. Doc.

4

25 at 9.

Finally, Plaintiff argues that Dr. Savant's life care plan should be submitted in its entirety. R. Doc. 25 at 9. Plaintiff argues that if Defendant is deemed liable for Jones Act negligence then all portions of the life care plan are relevant because the Defendant will be required to pay for both curative and palliative treatments. R. Doc. 25 at 9-10. Plaintiff further argues that while the treatments in the life care plan may not "cure" him, they are designed to help him either progress or not lose current abilities. R. Doc. 25 at 10. Plaintiff argues that these treatments fall under the broader definition of "cure" because they will better the Plaintiff's position in life. R. Doc. 25 at 11.

### III. LAW & ANALYSIS

#### a. Defendant's Motion for Partial Summary Judgment

##### i. Summary Judgment Standard (Fed. R. Civ. P. 56)

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)). "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial." *Id.* A party moving for summary judgment bears the initial burden of demonstrating the basis for summary judgment and identifying those portions of the record, discovery, and any affidavits supporting the conclusion that there is no genuine issue of material fact. *Id.* at 323. If the moving party meets that burden, then the nonmoving party must use evidence cognizable under Rule 56 to demonstrate the

5

existence of a genuine issue of material fact. *Id.* at 324.

A genuine issue of material fact exists if a reasonable jury could return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1996). "[U]nsubstantiated assertions," "conclusory allegations," and merely colorable factual bases are insufficient to defeat a motion for summary judgment. *See Hopper v. Frank*, 16 F.3d 92, 97 (5th Cir. 1994); *see also Anderson*, 477 U.S. at 249-50. In ruling on a summary judgment motion, a court may not resolve credibility issues or weigh evidence. *See Int'l Shortstop, Inc. v. Rally's Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991). Furthermore, a court must assess the evidence, review the facts and draw any appropriate inferences based on the evidence in the light most favorable to the party opposing summary judgment. *See Daniels v. City of Arlington, Tex.*, 246 F.3d 500, 502 (5th Cir. 2001); *Reid v. State Farm Mut. Auto. Ins. Co.*, 784 F.2d 577, 578 (5th Cir. 1986).

### ii. Negligence Standard

Under the Jones Act, to prove negligence, the plaintiff must demonstrate that his employer neglected a danger to the plaintiff that it "knew or should have known" and that its negligence played a part in producing the claimed damages. *Colburn v. Bunge Towing, Inc.*, 883 F.2d 372, 374 (5th Cir. 1989) (quoting *Turner v. Inland Tugs Co.*, 689 F. Supp. 612, 619 (E.D. La. 1988)).

### iii. Unseaworthiness Standard

"To establish a claim for unseaworthiness, the injured seaman must prove that the owner has failed to provide a vessel, including her equipment and crew, which is reasonably fit and safe for the purposes for which it was intended to be used." *Boudreaux v. United States of America*, 280 F.3d 461, 468 (5th Cir. 2002) (*quoting Jackson v. OMI Corp.*, 245 F.3d 525, 527 (5th Cir. 2001)). "The standard is not perfection, but reasonable fitness; not a ship that will weather every conceivable storm but a vessel reasonably suited for her intended service." *Boudoin v. Lykes*

6

*Bros. S.S. Co.*, 348 U.S. 336, 339 (1955). "A vessel's condition of unseaworthiness might arise from any number of circumstances. Her gear might be defective, her appurtenances in disrepair, her crew unfit. The number of men assigned to perform a shipboard task might be insufficient. The method of loading her cargo, or the manner of its stowage, might be improper." *Usner v. Luckenbach Overseas Corp.*, 400 U.S. 494, 499-500 (1971) (internal citations omitted); *see also Webb v. Dresser Indus.*, 536 F.2d 603, 606 (5th Cir. 1976), cert. denied, 429 U.S. 1121 (1977). A vessel is unseaworthy when an unsafe method of work is used to perform vessel services. *Rogers v. Eagle Offshore Drilling Serv.*, 764 F.2d 300, 303 (5th Cir. 1985); *Burns v. Anchor-Wate Co.*, 469 F.2d 730 (5th Cir. 1972). The duty of the vessel owner to provide a seaworthy vessel is an absolute non-delegable duty.

### iv. Vicarious Liability Standard

Jones Act employers have a duty to provide prompt and adequate medical care to their seaman. *Picou v. American Offshore Fleet, Inc.*, 576 F.2d 585 (5th Cir. 1978). This duty may be breached if the employer: 1) fails to provide any medical care, 2) fails to timely provide medical care, 3) negligently or improperly selects a doctor, or 4) by the negligence of the doctor selected by the employer. *De Centeno v. Gulf Fleet Crews, Inc.*, 798 F.2d 138 (5th Cir. 1986); *Fitzgerald v. A.L. Burbank & Co.*, 451 F.2d 670 (2nd Cir. 1971). A Jones Act employer may be vicariously responsible for the negligence of a physician it chooses to treat its seaman. *Central Gulf Steamship Corp. v. Sambula*, 405 F. 2d 291 (5th Cir. 1968). However, liability does not attach when the seaman, rather than the ship owner, has selected the doctor. *Joiner v. Diamond M Drilling Co.*, 688 F.2d 256 (5th Cir. 1982).

In *Thacker v. Diamond Offshore Drilling Services, Inc.*, the Court held that the Jones Act employer was not vicariously liable for the alleged negligence of a doctor because the employer

7

did not select the doctor nor did it have any agency relationship with the doctor. 2015 WL 12564185 (E.D. La. July 20, 2015). The Court reasoned that for vicarious liability to attach, "the [employer] must make some affirmative act in selecting or engaging the physician." *Id.* at n.1; *see also Dise v. Express Marine, Inc.*, 476 F. App'x 514 (4th Cir. 2011) (holding that Jones Act employer was not vicariously liable for alleged negligence of hospital because there was no agency relationship).

    **b. Discussion**

It is clear that Defendant, as a Jones Act employer, had a duty to Plaintiff to provide prompt and adequate medical care. The only question is whether that duty was satisfied. While employers have a duty to provide prompt and adequate medical care, "[t]he master or officers of a ship are not required to possess the medical knowledge, skill, or discernment of a physician or surgeon so as to enable them to diagnose and treat the ailments of the seaman." 2 The Law of Seamen § 26:65 (5th ed.). If a physician is not aboard the ship, or the employer has not contracted with or chosen a physician on land, the employer's duty is generally exhausted when he delivers the employee into the hands of a doctor holding himself out to have medical expertise.[1] Of course it is possible for an employer to act with negligence in this situation as well. For example, it would be negligent for an employer in an emergency situation to delay calling for emergency medical assistance.

---

[1] "The underlying basis for the shipowner's liability to its crew for the negligent provision of medical care is found in its nondelegable duty to provide cure. As such, the law imposes vicarious liability on the shipowner *where it delegates* this duty to a physician or other health care provider, who negligently carries out this obligation belonging to the shipowner.
Nevertheless, a shipowner is not a doctor or a health care provider and accordingly, maritime law does not impose a duty upon the shipowner to control or supervise the actions of a doctor, who has medical expertise not available to the shipowner. Likewise, neither a shipowner nor its crew can be held liable for failing to second guess a doctor. Accordingly, while the shipowner may be held vicariously liable for the doctor's negligence, it cannot be liable for failing to supervise the doctor. Therefore, in order to establish the shipowner's liability for failing to properly provide cure, the seaman must first prove that the underlying care was in fact negligently rendered in the first instance."
Robert D. Peltz & Vincent J. Warger, *Medicine on the Seas*, 27 Tul. Mar. L.J. 425, 438–39 (2003) (internal citations omitted) (emphasis added).

However, that is not the case here.

Plaintiff has failed to produce any evidence or allege that Defendant itself was negligent or that there was anything wrong with the vessel that would make it unseaworthy. Instead, Plaintiff's argument rests on alleged vicarious liability of Defendant for the alleged medical malpractice of doctors at TRMC. Plaintiff cites *De Centeno* and *Central Gulf Steamship Corporation* for the proposition that Jones Act employers may be held liable for the negligence of medical professionals treating Jones Act seamen. However, the facts in those cases are quite different from the facts in Plaintiffs case. In both *De Centeno* and *Central Gulf Steamship Corp.*, plaintiffs were injured while in foreign ports and defendants selected the doctors treating plaintiffs. *De Centeno*, 798 F.2d at 139; *Central Gulf Steamship Corp.*, 405 F. 2d at 293. Further, in both cases, plaintiffs returned to their ships and their injuries worsened because defendants failed to provide additional care. *De Centeno*, 798 F.2d at 139; *Central Gulf Steamship Corp.*, 405 F. 2d at 293. Here, Plaintiff was injured in Amite, Louisiana and Defendant promptly called 911 and saw that Plaintiff was put in an ambulance and taken to a hospital; Plaintiff did not return to the vessel but was treated at TRMC for his injuries.

Plaintiff also attempts to draw a parallel between his facts and those in *Hopson v. Texaco*, 383 U.S. 262 (1966). In *Hopson*, the Court held that the Jones Act employer was vicariously liable for injuries that occurred in a taxi accident because the employer had selected the taxi to transport the plaintiff for medical treatment. *Id.* The Court reasoned that the employer "should bear responsibility for the negligence of the driver which it chose." *Id.* at 264. On the contrary, here, the Defendant did not chose the ambulance service. Rather it was dispatched by the 911 operator. And further, Plaintiff does not allege that the ambulance service was negligent. Instead, Plaintiff wishes to go another step further and hold Defendant liable for actions by TRMC medical staff

9

because the ambulance driver, not chosen by Defendant, chose to transport Plaintiff to the TRMC facility, which was presumably the nearest hospital.

The summary judgment record confirms that Plaintiff cannot prove an essential element of the vicarious liability claim: Plaintiff was not referred by Defendant to TRMC, the doctors at TRMC are not Defendant's employees or agents, and there was no contractual agreement with Defendant for TRMC to treat its injured employees. Rather, Defendant promptly sought medical treatment for Plaintiff by calling 911 and ensuring that he was taken to a medical facility for treatment. The particular medical facility was chosen by the ambulance service and initial medical responders. Here, Plaintiff argues that he was incapacitated and unable to choose a medical facility for himself. However, neither did Defendant participate in any way in the selection of TRMC or their doctors to treat Plaintiff. Therefore, Defendant may not be held vicariously liable for alleged medical malpractice of doctors at TRMC.

### c. Defendant's Motion to Exclude and/or Limit Testimony of Plaintiff's Experts

#### i. Rule 702 - Helpfulness

Federal Rule of Evidence 702 provides that an expert witness may testify in the form of an opinion if "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. "Trial Courts have 'wide discretion' in deciding whether or not a particular witness qualifies as an expert under the Federal Rules of Evidence." *Hidden Oaks Limited v. City of Austin*, 138 F.3d 1036, 1050 (5th Cir. 1998). If there is a good chance that the jury will be "[un]familiar with offshore rigs . . . Plaintiff's proposed expert will be helpful in providing the jury with the background they will need to understand the evidence presented at trial." *McMullin v. BP Oil Exploration & Prod.*, 2013 U.S. Dist. LEXIS 81272, at *18-19 (E.D. La. June 10, 2013).

However, expert testimony is not needed when "the jury c[an] adeptly assess th[e] situation using only their common experience and knowledge." *Peters v. Five Star Marine Serv.*, 898 F.2d 448, 450 (5th Cir. 1990). In *Peters*, the Court reasoned that "the [Defendant's] obligation to keep the deck clean of diesel fuel and to keep cargo properly stowed, [as well as] the hazards of offloading a vessel" were enough within the common knowledge and experience of jurors that expert testimony was not needed. *Id.* at 449-50; *see also Thomas v. Global Explorer, LLC*, 2003 WL 943645 (E.D. La. Mar. 3, 2003) (excluding expert testimony that included a summary of facts from testimony and citations to regulations because no expertise was needed to reach the opinion). Furthermore, experts may not provide "legal conclusions or … simply tell the jury what result to reach." *Owen v. Kerr-McGee Corp.*, 698 F.2d 236, 240 (5th Cir. 1983); *United States v. Fogg*, 652 F.2d 551, 557 (5th Cir. 1981), *cert. denied* 456 U.S. 905 (1982); *United States v. Milton*, 555 F.2d 1198, 1203 (5th Cir. 1977).

### ii. *Daubert* Factors

Scientific testimony is reliable only if "the reasoning or methodology underlying the testimony is scientifically valid," meaning that such testimony is based on recognized methodology and supported by appropriate validation based on what is known. *Daubert v. Merrel Dow Pharmaceuticals*, 509 U.S. 579, 592-93 (1993). The reliability of an expert's testimony is evaluated using the non-exhaustive *Daubert* factors. 509 U.S. 579. These factors include:

1. Whether the expert's technique or theory can or has been tested – that is, whether the expert's theory can be challenged in some objective sense, or whether it is instead simply a subjective, conclusory approach that cannot reasonably be assessed for reliability;
2. Whether the technique or theory has been subject to peer view and publication;
3. The known or potential rate of error with a technique or theory when applied;
4. The existence of maintenance and standards of control; and
5. Whether the technique or theory has been generally accepted in the scientific community.

*Id.* In *Daubert*, the Supreme Court held that trial courts should serve as gatekeepers for expert testimony and should not admit such testimony without first determining that the testimony is both "reliable" and "relevant." *Id.* at 589.

The trial court is the gatekeeper of scientific evidence. *Id.* at 596. It has a special obligation to ensure that any and all expert testimony meets these standards. *Id.* Accordingly, it must make a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and whether the reasoning or methodology can be properly applied to the facts in issue. *Id.* at 592-93. In making this assessment, the trial court need not take the expert's word for it. *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 147 (1997). Instead, when expert testimony is demonstrated to be speculative and lacking in scientific validity, trial courts are encouraged to exclude it. *Moore v. Ashland Chem., Inc.*, 151 F.3d 269, 279 (5th Cir. 1998).

In satisfying its "gatekeeper" duty, the Court will look at the qualifications of the experts and the methodology used in reaching their opinions and will not attempt to determine the accuracy of the conclusion reached by the expert. The validity or correctness of the conclusions is for the fact finder to determine.

       **iii. Discussion**

Here, Defendant Crosby's motion first asks the Court to exclude the testimony of Plaintiff's medical expert Dr. Shamsnia as it relates to the standard of care in emergency medicine. In his deposition testimony, Dr. Shamsnia speaks about the standard of care requires by emergency room physicians. While Dr. Shamsnia does not currently work in an emergency room and his particular area of specialty is not emergency medicine, in general medical doctors experience exposure to emergency medicine during their training and have expertise in the area of medicine in general. Dr. Shamsnia's particular knowledge about emergency medicine in particular is best challenged

during cross-examination. Therefore, Dr. Shamsnia's is qualified and permitted to testify regarding standards of care in emergency medicine.

Second, Defendant asks the Court to grant a *Daubert* hearing regarding Dr. Shamsnia's proposed testimony that CPAP and neuroregenerative therapies can regenerate Plaintiff's brain. In his deposition testimony, Dr. Shamsnia opined that various methods of stimulating the brain can cause the brain to generate new synapses and potentially heal damage from brain injuries such as strokes. As a neurologist, Dr. Shamsnia is certainly qualified to give expert testimony regarding neurology. However, with regard to this particular testimony, the Court is required to determine whether there is the scientific basis and medical certainty required for to conclude that the proposed therapies can have the claimed effect. The Court finds that it is appropriate to conduct a *Daubert* hearing to determine whether the proffered expert testimony that CPAP and neuroregenerative therapies will produce the particular effect of creating new synapses and healing Plaintiff's injuries caused by stroke.

Finally, Defendant asks the Court to exclude the testimony of Dr. Savant regarding Plaintiff's life care plan. In view of the fact that what qualifies as palliative depends on facts, the Court will reserve ruling on the testimony of Dr. Savant until the time of trial.

## IV. CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that Defendant's Motion for Partial Summary Judgment, R. Doc. 20, is hereby **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant's Motion to Exclude and/or Limit Testimony of Plaintiff's Experts, R. Doc. 22, is hereby **GRANTED IN PART AND DENIED IN PART** as described above.

New Orleans, Louisiana this 21st day of September, 2017.

                                                                               UNITED STATES DISTRICT JUDGE